**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONNIE WEBB,
Plaintiff-Appellant,

v.

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

No. 99-1549

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CA-97-56-2-BO)

Submitted: September 21, 1999

Decided: October 6, 1999

Before MURNAGHAN, MICHAEL, and TRAXLER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael B. Sosna, Henderson, North Carolina, for Appellant. Janice
McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant
United States Attorney, Barbara D. Kocher, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Ronnie Webb appeals an order of the district court granting judgment on the pleadings to the Commissioner of Social Security in Webb's suit challenging denial of his claims for social security disability benefits (DIB) and supplemental security income (SSI). We affirm.

Webb was born June 10, 1966. He has a twelfth-grade education and a ten-year work history. His longest and most recent employment was as a painter at a shipyard. He has not worked, however, since September 27, 1994. On that date, he was admitted to the hospital with complaints of shortness of breath and edema. A chest x-ray revealed that he was suffering from dilated cardiomyopathy with congestive heart failure, and an echocardiogram calculated his ejection fraction[1] as only about 20%. His blood pressure was also elevated. In a few days, his most severe symptoms had abated. Upon his discharge, he was advised to stop smoking and to stop drinking alcohol. The discharge diagnosis by the attending physician, Dr. Gerardo Maradiaga, was "Dilated cardiomyopathy, probably alcohol induced." A consulting cardiologist, Dr. Jose Antony, stated that Webb's abstinence from alcohol was "mandatory," and he should be reevaluated in three months to see if there had been improvement. For the time being, Dr. Antony felt that Webb was disabled from gainful employment.

By December 1994, Webb was doing much better. An echocardio-

_____

[1] "Ejection fraction" is a measure of the efficiency of the ventricles. It is "the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole[.]" Dorland's Illustrated Medical Dictionary 660 (28th ed. 1994). Its normal range is 57-73%, with lower values indicative of ventricular dysfunction. Id.

gram obtained on December 21 showed that his left ventricle had become smaller and the ejection fraction, while still abnormally low, had improved to about 40%.

Three themes pervade the medical record from January 1995 through the date of the hearing. First, Webb's cardiomyopathy was relatively stable (with ejection fractions ranging from 35% to 45%) and asymptomatic. Second, because he often ran out of his medications and could not afford refills, he continued to suffer from hypertension. Finally, though there is no evidence that he drank heavily, he did not fully abstain from alcohol.

Webb filed claims for DIB and SSI on April 5, 1995, alleging disability since September 27, 1994. The claims were denied initially and on reconsideration. Webb requested a hearing before an ALJ. The hearing was held on June 18, 1996. Though a good deal of documentary evidence was received, Webb was the only testifying witness.

Webb testified that he occasionally had shortness of breath, most recently two weeks before the hearing. He could bring on this symptom by standing for three or four hours. He felt tired and rested three hours a day. On a typical day, he walked a few blocks around his neighborhood, and he was able to do light household chores like dusting. He had recently been married, and his wife did many things he used to do for himself. He acknowledged that his doctor had told him that drinking would kill him, and though he did "pretty good" at staying away from alcohol, he did not do so entirely.

The ALJ denied benefits. He found that Webb has a severe impairment, cardiomyopathy, and also abuses alcohol. He concluded that if Webb's alcohol abuse is not taken into account, Webb retains the functional capacity to do the full range of sedentary work. The Appeals Council affirmed. Webb then filed this suit against the Commissioner in district court. On cross-motions for judgment on the pleadings, the court upheld the denial of benefits. Webb appeals.

The standard of review is familiar. We must affirm the Commissioner's decision if it is in accordance with law and is supported by substantial evidence. See 42 U.S.C.A. § 405(g) (West Supp. 1999); Richardson v. Perales, 402 U.S. 389 (1971). "Substantial evidence"

3

is evidence of sufficient quality and quantity as "a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is more than a scintilla, but less than a preponderance of the evidence. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

If addiction to drugs or alcohol is a "contributing factor material to the Commissioner's determination that [an] individual is disabled," then SSI and DIB are not available. 42 U.S.C.A.§§ 423(d)(2)(C), 1382c(a)(3)(J) (West Supp. 1999). Webb argues that the ALJ misapplied this provision. According to Webb, this exclusion applies only when a claimant is disabled but would not be if he stopped using alcohol or drugs. Thus, it is irrelevant that Webb's cardiomyopathy may have been caused by past alcohol abuse, because there is no evidence that the condition would go away if he refrained from future use or abuse.

We conclude Webb is fighting a straw man on this point; the ALJ interpreted the statute just as he urges. The ALJ found that Webb's cardiomyopathy was a severe impairment and that it limited Webb to sedentary work. Had the ALJ believed that the cardiomyopathy was within the statute's definition of "alcohol addiction," he would have found no severe impairment at all.[2]

Next, Webb argues that there is not substantial evidence that he continues to abuse alcohol, as found by the ALJ. This alleged error is of no moment, because the finding is superfluous, given that the impairment found--i.e., cardiomyopathy--is not disabling.

Finally, Webb asserts that the ALJ erred by finding that his hypertension is not "severe." "Severe" is a term of art in disability law. The ALJ's finding does not mean that Webb's hypertension is not deserving of concern from a medical standpoint; instead, it means that

_____

[2] In a corollary argument, Webb asserts that the ALJ failed to give proper weight to an opinion of his treating physician submitted after the hearing. This opinion described Webb's cardiomyopathy as "idiopathic" --i.e., of unknown cause--with alcohol as simply "one of the possible causes." Again, the severity, rather then the cause, of this impairment was the issue before the ALJ.

4

hypertension has no present effect on his ability to work. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c) (1998). The denial of benefits is in accordance with law and is supported by substantial evidence. The judgment of the district court is affirmed.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5